**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-2204

BRICKSTREET MUTUAL INSURANCE COMPANY,

Plaintiff - Appellee,

v.

ZURICH AMERICAN INSURANCE COMPANY,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Joseph R. Goodwin, District Judge. (2:15−cv−06172)

Argued: May 10, 2017                    Decided: June 28, 2017

Before WILKINSON, KEENAN, and THACKER, Circuit Judges.

Questions certified to the Supreme Court of Appeals of West Virginia by unpublished order. Judge Keenan directed entry of the order with the concurrences of Judge Wilkinson and Judge Thacker.

**ARGUED:** Philip John Sbrolla, CIPRIANI & WERNER, PC, Wheeling, West Virginia, for Appellant. Don C.A. Parker, SPILMAN, THOMAS & BATTLE, PLLC, Charleston, West Virginia, for Appellee. **ON BRIEF:** Jeffrey B. Brannon, CIPRIANI & WERNER, PC, Wheeling, West Virginia, for Appellant.

---

ORDER

---

BARBARA MILANO KEENAN, Circuit Judge:

The United States Court of Appeals for the Fourth Circuit, exercising the privilege afforded by the State of West Virginia through the Uniform Certification of Questions of Law Act, West Virginia Code §§ 51–1A–1 through 51–1A–13, requests that the Supreme Court of Appeals of West Virginia exercise its discretion to answer the following questions:

(1) Does jurisdiction lie exclusively with the West Virginia Workers' Compensation Office of Judges to hear disputes between insurance carriers regarding whether one or both carriers are responsible for contributing toward payment of an employee's workers' compensation benefits?

(2) West Virginia Code § 33–46A–7(a) requires that parties to a professional employer agreement designate "either" the professional employer organization (PEO) "or" the client-employer as responsible for obtaining workers' compensation insurance coverage for covered employees[1]; and under subsection (b) of the statute, if the PEO is the designated party, the client-employer "shall at all times remain ultimately liable" to provide workers' compensation coverage for covered employees. Do these statutory provisions mandate the designated party's workers' compensation policy as the primary policy over coverage provided by the other party, precluding the PEO and client-employer from agreeing to provide shared coverage? And, if the PEO is designated as the responsible party to obtain workers' compensation coverage, does the term "ultimately" trigger liability by

---

[1] "'Covered employee' means a person employed by a client-employer for whom certain employer responsibilities are shared or allocated pursuant to a PEO agreement." W. Va. Code § 33–46A–2(c). It is undisputed, as discussed below, that the injured party in the present case is a "covered employee."

2

the client-employer for such coverage only if the PEO, or its carrier, defaults?

(3) When a PEO is named as the sole employer in a workers' compensation claim, does the "other insurance" clause in the PEO's workers' compensation insurance policy require the client-employer's insurer to pay a portion of benefits, when the PEO is not an insured party under the client-employer's policy?

This Court acknowledges that the Supreme Court of Appeals may restate these questions. *See* W. Va. Code §§ 51–1A–4, 51–1A–6(a)(3). In our view, there is no controlling appellate decision, constitutional provision, or statute of West Virginia that answers these questions. Accordingly, we conclude that the questions are appropriate for certification. *See id.* § 51–1A–3.

I.

In this case involving an insurance coverage dispute, the facts are not contested. In January 2012, Jonathan Gutierrez suffered serious injuries while working at the "Tunnel Ridge Mine River Load-Out" in West Virginia, which mine was operated by Taggart Site Services (Taggart). Gutierrez filed a claim for workers' compensation benefits with EIN Resources (EIN), a PEO that had hired Gutierrez and had assigned him to work with Taggart. Gutierrez did not file a workers' compensation claim with Taggart.[2]

---

[2] Gutierrez also filed a civil action against Taggart, EIN, and other defendants, which litigation resulted in a confidential settlement agreement.

EIN maintained workers' compensation insurance coverage pursuant to a policy issued by BrickStreet Mutual Insurance Company (BrickStreet). BrickStreet determined that Gutierrez's claim was compensable, and no party filed a protest with the West Virginia Workers' Compensation Office of Judges.[3] Accordingly, BrickStreet began paying Gutierrez's workers' compensation benefits, which benefits already have exceeded $2 million and ultimately may exceed $4 million.

BrickStreet filed an action in federal district court against Zurich American Insurance Company (Zurich), which had issued a separate workers' compensation policy to Taggart. BrickStreet alleged that Zurich was obligated to contribute half of all benefits paid to Gutierrez. Zurich filed a motion to dismiss for lack of subject matter jurisdiction alleging that BrickStreet should have resolved its claim through the state workers' compensation administrative process. The district court denied the motion.[4]

The parties filed cross-motions for summary judgment. After a hearing, the district court concluded that Zurich was obligated to share in payment of Gutierrez's benefits and entered summary judgment in favor of BrickStreet.

On appeal, Zurich raises three arguments: (1) the district court lacked jurisdiction to consider BrickStreet's complaint, because West Virginia law requires that all issues relating to workers' compensation be addressed through the state's administrative

---

[3] "[T]he employer's carrier has sole authority to act on the employer's behalf in all aspects related to litigation of the claim." W. Va. Code § 23–5–1(a).

[4] The district court also denied Zurich's alternative argument raised in the motion to dismiss for failure to state a claim.

4

processes; (2) the relevant state statutory provisions establish that as EIN's insurer, BrickStreet solely was responsible for Gutierrez's workers' compensation benefits; and (3) the provision in BrickStreet's policy addressing "other insurance" does not require Zurich to share in payment of workers' compensation benefits for covered employees. We address these arguments in turn.

## II.

## A.

Zurich first argues that the district court lacked subject matter jurisdiction over BrickStreet's complaint because only the West Virginia Workers' Compensation Office of Judges (the Office of Judges) may decide issues related to Gutierrez's workers' compensation claim. Zurich relies on the West Virginia Workers' Compensation Act (the Act), W. Va. Code § 23–1–1 *et seq.*, to argue that "the sole jurisdiction for the adjudication of worker[s'] compensation benefits" is through the administrative process created by the legislature. W. Va. Code § 23–5–9.

In order to obligate Zurich to contribute to Gutierrez's benefits, Zurich contends that BrickStreet was required under the Act either to deny Gutierrez's claim or to alter its decision to award benefits within two years of that decision, under West Virginia Code § 23–5–1(e). If BrickStreet had taken one of these actions, Zurich contends that Taggart could have been added to the claim's litigation as a potential, additional "chargeable employer." *See* W. Va. Code R. § 93–1–15. Because BrickStreet failed to take these

5

steps in the only venue with jurisdiction, Zurich maintains that the district court lacked jurisdiction to review BrickStreet's complaint.

In response, BrickStreet contends that the procedures in the Act apply only to the administration of workers' compensation claims, namely, the review, appeal, and modification of awards of benefits, and that the Act is not applicable to the separate issue of an insurance coverage dispute. *See generally* W. Va. Code § 23–5–1. BrickStreet argues that because Gutierrez's claim already had been deemed compensable without involvement by the Office of Judges, the issue whether Zurich is obligated to pay a portion of those benefits lies outside the scope of the Act. Accordingly, BrickStreet submits that the district court properly invoked its jurisdiction under 28 U.S.C. § 1332(a).

We have not found any West Virginia authority that definitively answers the question presented. Thus, we conclude that the issue whether jurisdiction lies exclusively with the Office of Judges to hear disputes between insurance carriers regarding whether one or both carriers are responsible for contributing toward payment of a covered employee's workers' compensation benefits warrants certification of the question to the Supreme Court of Appeals of West Virginia.

B.

Zurich next argues that under West Virginia statutory and regulatory law addressing PEOs and client-employers, EIN's carrier, BrickStreet, solely was responsible for paying Gutierrez's workers' compensation benefits. Zurich maintains that its workers' compensation policy issued to Taggart was secondary to the BrickStreet policy, and that Zurich only was "ultimately liable" to pay benefits in the event that EIN

6

defaulted on its workers' compensation obligation. In response, BrickStreet maintains that West Virginia law does not dictate which insurance policy takes priority over the other, permitting parties to draft policy language to address priority of coverage.

West Virginia provides for the operation of PEO agreements by both statute and regulation. The West Virginia code provides:

> [a]ny allocation of employer duties and responsibilities between a PEO and a client-employer pursuant to this article should preserve all rights to which covered employees would be entitled under a traditional employment relationship.

W. Va. Code § 33–46A–1. These employee rights include entitlement to workers' compensation benefits. Although employers may not contractually "exempt [themselves] from the burden" of providing workers' compensation benefits, *see* West Virginia Code § 23–2–7, the statute governing PEOs addresses responsibility for workers' compensation benefits in the context of PEO agreements:

> (a) The responsibility to obtain workers' compensation coverage for covered employees in compliance with all applicable law shall be specifically allocated in the professional employer agreement to *either* the client-employer *or* the PEO.
> (b) If the responsibility is allocated to the PEO under the agreement:
> > (1) The agreement shall require that the PEO maintain and provide workers' compensation coverage for the covered employees from a carrier authorized to do business in this state: *Provided*, That the provisions of section seven, article two, chapter twenty-three of this chapter[5] may not be abrogated by a PEO agreement and the client-employer shall at all times remain *ultimately liable* under chapter twenty-three of this code to provide workers' compensation coverage for its covered employees.

---

[5] This provision states that no employer "shall exempt himself from the burden . . . of this chapter by any contract, agreement, rule or regulation." W. Va. Code § 23–2–7.

W. Va. Code § 33–46A–7 (emphasis added) (the PEO statute).

The provision in subsection (a) requiring parties to designate "*either* the client-employer *or* the PEO" as the responsible party to obtain coverage appears to establish that ordinarily only the party designated in the PEO agreement would be liable to pay workers' compensation benefits. *See id.* In the present case, the parties' PEO agreement in Section 2.3 designates the PEO, EIN, as the responsible party:

> EIN shall obtain and maintain workers' compensation coverage on all Worksite Employees[6] assigned to [Taggart's] workplace(s) and shall administer all related workers' compensation claims. [Taggart] shall, however, maintain its status as a complying employer with its current insurance carrier . . . . Upon termination of [the PEO agreement] for any reason, EIN may . . . cause any and all workers' compensation liability relating to Worksite Employees assigned to [Taggart's] workplace(s) to be assigned to [Taggart's] active workers' compensation risk number.

Because the PEO agreement designates the PEO and not the client-employer as the entity responsible for obtaining workers' compensation coverage, subsection (b) of the PEO statute is applicable here. *See* W. Va. Code § 33–46A–7(b). Subsection (b) establishes that Taggart is "ultimately liable" to provide workers' compensation coverage. *Id.* And, if EIN and its carrier are primarily liable to provide such coverage, the statutory phrase "ultimately liable" appears to contemplate that Taggart and its carrier are liable to provide benefits only if EIN and its carrier fail to provide such coverage.

---

[6] "Worksite employees" are "persons employed by a PEO and not by a client-employer." W. Va. Code § 33–46A–2(j). The PEO agreement describes "worksite employees" as "EIN employees" assigned to work at Taggart's workplace.

8

One West Virginia regulation addressing the priority of workers' compensation policies between a PEO and a client-employer appears to support this understanding of the PEO statute. The regulation states:

> If on the relevant date of injury there is both a PEO workers' compensation policy in effect and a direct purchase policy in effect, the following shall apply:
> a. If the claimant is a covered employee, then the PEO policy shall be the primary policy; or
> b. If the claimant is not a covered employee, then the direct purchase policy shall be the primary policy.

W. Va. Code R. § 85–31–6.3. The priority of coverage set forth in this regulation appears consistent with Zurich's view of the manner in which the PEO statute operates. However, the regulation appears to apply only to "master policies," in which a PEO's insurance policy covers more than one client-employer. *See id.* § 85–31–3.7. Here, EIN's policy issued by BrickStreet is a multiple coordinated policy issued to a PEO for a single client-employer, namely, Taggart. *See id.* § 85–31–3.8. Thus, the regulation may or may not aid in the West Virginia Supreme Court of Appeals' interpretation of the PEO statute.

The district court concluded, however, that the PEO statute does not explicitly "delineate one party's workers' compensation policy as primary to the other in the event that both a PEO and client-employer obtain coverage." Under this alternative view, even when a PEO is designated as responsible for maintaining coverage in a PEO agreement, the client-employer is "ultimately liable" to provide coverage along with the PEO, with the terms of the shared coverage dependent on the language of the policies.

9

Accordingly, we have not found West Virginia authority that answers the question whether the PEO statute establishes a priority of workers' compensation coverage between a PEO and a client-employer. We therefore conclude that certification is warranted to address whether the PEO statute: (1) establishes that the policy held by the party designated to obtain workers' compensation coverage shall take priority over coverage provided by the non-designated party, precluding the PEO and client-employer from agreeing to provide shared coverage; and (2) establishes that when the PEO is the designated responsible party, the client-employer's workers' compensation coverage is triggered only upon the PEO's failure to provide coverage.

C.

Finally, Zurich contends that the "other insurance" provision in BrickStreet's policy issued to EIN did not require Zurich to share in payment of workers' compensation benefits for covered employees. In Zurich's view, the "other insurance" provision is inapplicable because EIN was not insured under Zurich's policy. BrickStreet disagrees and submits that the "other insurance" clause was enforceable and required the carriers to share equally in payment of Gutierrez's workers' compensation benefits, because the BrickStreet policy issued to EIN named Taggart as an additional insured.

Both the policy issued by BrickStreet and the policy issued by Zurich contain provisions addressing "other insurance." Those provisions state:

> We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any

10

insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

Under West Virginia law, an "other insurance" clause can limit an insurer's liability "when risk coverage is identical," namely, when "two or more policies insure the same party upon the same subject matter and assume the same risks." *State v. Janicki*, 422 S.E.2d 822, 824–25 (W. Va. 1992) (citation omitted).

In Zurich's view, the "other insurance" provision of the BrickStreet policy does not apply here because the BrickStreet and Zurich policies do not "insure the same party." Although both policies cover the risk that an employee subject to the PEO agreement would require workers' compensation benefits, injured workers are not the "insured parties" under the terms of these contracts. EIN was the only employer subject to the underlying workers' compensation claim, and EIN is covered only under the BrickStreet policy.

EIN's policy with BrickStreet, however, also lists Taggart as an additional named insured. Thus, BrickStreet submits that both its policy and Zurich's policy provided the same coverage to Taggart and necessarily invoke application of the "other insurance" provisions.

This Court is unaware of any controlling decisions from West Virginia on this question. Therefore, we conclude that certification is warranted to address whether, when a PEO is named as the sole employer in a workers' compensation claim, the "other insurance" clause in the PEO's workers' compensation insurance policy requires the

11

client-employer's insurer to pay a portion of benefits, when the PEO is not an insured party under the client-employer's policy.

III.

Under the privilege made available by the West Virginia Uniform Certification of Questions of Law Act, it is hereby ORDERED:  (1) That the questions stated above be, and the same hereby are, certified to the Supreme Court of Appeals of West Virginia; (2) that the Clerk of this Court forward to the Supreme Court of Appeals of West Virginia, under the official seal of this Court, a copy of this order and, to the extent requested by the Supreme Court of Appeals of West Virginia, the original or a copy of the record in this Court; and (3) that any request for all or part of the record be fulfilled by the Clerk of this Court simply upon notification from the Clerk of the Supreme Court of Appeals.

The names and addresses of counsel of record for the parties are:

Counsel for Zurich American Insurance Company
Philip J. Sbrolla
Cipriani & Werner, P.C.
1144 Market Street, Suite 300
Wheeling, WV 26003

Counsel for BrickStreet Mutual Insurance Company
Don C.A. Parker
Spilman, Thomas & Battle, PLLC
300 Kanawha Boulevard, East
Charleston, WV 25301

This Order is entered by Circuit Judge Keenan, with Judges Wilkinson and Thacker concurring.

*QUESTIONS CERTIFIED*